IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BRAD JONES, *Plaintiff* | § | |
| | § | |
| and | § | |
| | § | |
| Exquisite Designs By Castlerock & CO, Inc., *Plaintiff* | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:19-CV-00060** |
| *vs.* | § | |
| | § | |
| BAYVIEW LOAN SERVICING, LLC, *Defendant* | § | |
| | § | |
| | § | |
| and | § | |
| | § | |
| SHELLPOINT MORTGAGE SERVICING, LLC, *Defendant* | § | |
| | § | |
| and | § | |
| | § | |
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2006-OA17), and AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2004-15, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-15, and TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2007-HY2, MORTGAGE PASS-THROUGH CERTIFICATE, SERIES 2007-HY2, *Defendant* | § § § § § § § § § § § § § § § § | |

**PLAINTIFF'S FIRST AMENDED PETITION, REQUEST FOR DECLARATORY JUDGMENT, SUIT TO QUIET TITLE, APPLICATION FOR PERMANENT INJUNCTIONS, AND REQUEST FOR DISCLOSURES**

Brad Jones ("Jones") and Exquisite Designs By Castlerock & Co. Inc. ("Exquisite"), a Texas Corporation (collectively the "Plaintiffs") files this *First Amended Petition, Request For*

1

*Declaratory Judgment, Suit To Quiet Title, Application For Permanent Injunctions, And Request For Disclosures* against Bayview Loan Servicing, LLC ("Bayview"), Shellpoint Mortgage Servicing, LLC ("Shellpoint"), and The Bank of New York Mellon f/k/a The Bank of New York, as Trustee (CWALT 2006-OA17), and as Trustee For The Certificateholders Of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-15, Mortgage Pass Through Certificates, Series 2004-15, and as Trustee For The Certificateholders Of The CWALT, Inc., Alternative Loan Trust 2007-HY2, Mortgage Pass-Through Certificate, Series 2007-HY2 ("BONY"), (collectively the "Defendants"), and would respectfully show the Court as follows:

### PARTIES

1. Brad Jones is an individual who resides in Harris County Texas, and is a party-in-interest and 100% shareholder of Exquisite Designs By Castlerock and Company, Inc.. Jones is only the signer of the original note and deed of trust on two (2) of the Subject Properties.

2. Exquisite Designs By Castlerock Co, Inc. is a Texas corporation who is authorized to do business in the State of Texas and is in good standing with the office of the Texas Comptroller of Public Accounts. Exquisite was the debtor in two Chapter 11 cases, which were confirmed in the U.S. Bankruptcy Court of the Texas Southern District. Exquisite is the holder of all claims of Veronica Staley, which attached to the Subject Properties.

3. Bayview Loan Servicing LLC, is a Delaware Limited Liability Company, who is authorized to do business in the State of Texas and is in good standing with the office of the Texas Comptroller of Public Accounts.  Bayview may be serve by serving citation, together with a copy of this petition, on its registered agent, Corporation Service Company d/b/a Csc-Lawyers INCO, at 211 E. 7th Street Suite 620 Austin, TX 78701, or wherever they may be found. Bayview is an authorized agent and loan servicers on behalf of BONY.

4. Shellpoint Mortgage Servicing, LLC a/k/a NewRez, LLC may be serve by serving citation, together with a copy of this petition, at Shellpoint's Houston Texas office located at 2020 S. Dairy Ashford Road, Suite 200  Houston, Texas 77077 or wherever they may be found . Shellpoint is an authorized agent and loan services on behalf of BONY.

5. The Bank of New York Mellon f/k/a The Bank of New York, is a Delaware Corporation who is authorized to do business in the State of Texas and is in good standing with the office of the Texas Comptroller of Public Accounts.  The Bank of New York Mellon f/k/a The Bank

of New York may be serve by serving citation, together with a copy of this petition, on its registered agent, The Corporation Trust Company, at 1209 Orange Street, Wilmington, DE 19801

6. Bayview, Shellpoint, and The Bank of New York Mellon are successors of Bank of America N.A. f/k/a Countrywide Home Loans ("BANA"). BANA was the original owner and loan servicer of the note for the Subject Properties.

## JURISDICTION

7. This Court *does not* have subject-matter jurisdiction[1]. More specific, subject matter jurisdiction over disputes or matters regarding the confirmed plans, orders of confirmation, or any act during the two bankruptcy proceedings which were raised, or could have been raised, where no appeal was filed.[2]

8. The Court has personal jurisdiction over the Defendant, because Bayview, Shellpoint and BONY purposely availed itself of the privileges and benefits of conducting business in Texas

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial part of the Subject Properties are located in this District and a substantial part of the events occurred within this District. Venue is further proper under 28 U.S.C. § 1331 and § 1332(a) because the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and there's complete diversity of the parties. In addition, the Defendants have transacted business and maintained an office in this District throughout the relevant period.

## SUMMARY OF THE PLAINTIFF'S COMPLAINT

---

[1] Federal Rule of Appellate Procedure 4(a)(1)(A) requires that the notice of appeal "be filed with the district clerk within 30 days after entry of the judgment or order appealed from." The requirement "is not jurisdictional but is a 'prerequisite to the exercise of [subject matter] jurisdiction.'" *United States v. Burns*, 668 F.2d 855, 858 (5th Cir. 1982) (quoting *Sanchez v. Bd. of Regents of Tex. S. Univ.*, 625 F.2d 521, 522 n.1 (5th Cir. 1980))

[2] Plaintiffs do believe this Court has very limited jurisdiction to execute orders as to the binding effect of the prior Orders Of Confirmation by the bankruptcy court, without addressing the merits of the bankruptcy case or re-litigating matters not previously raised on appeal. This Court further has the same jurisdiction over civil matters which could have been brought in state court, where the value or claims exceed $75,000.00, including jurisdiction to issue a declaratory judgment and order to quiet title on the Subject Properties.

10. The Defendants have refused to adhere to the terms of two (2) Orders of Confirmation and Plans of Reorganization, which are final and non-appealable orders. The Defendant's failure to abide by the terms of the Plans and their gross negligence has resulted in damages to the Plaintiffs; including the Plaintiff's inability to sell or utilize the Subject Properties, increased the cost of financing from third parties, complete denial of financing from third parties, caused damages to the Plaintiff's credit reputation, clouded title to the Subject Properties, and other causes of action under RESPA, FDCPA, Texas DTPA violations.

11. **No appeal on the Order of Confirmation was timely file in either bankruptcy case**. The matters being raised by the Defendants are now binding, barred from collateral attack and the principals of res judicata applies.

12. Plaintiffs seek a declaratory judgment to enforce the terms and provisions of the Plans, including (but not limited to) the injunctive provisions related to Jones and others,  the disallowed *and* disputed claims status of the Defendants claims, and the lien stripping provisions provided for in the Plans and post-confirmation orders.

13. Plaintiffs further complain that the Defendants are time-barred to enforce a promissory note secured by a real property lien under Texas law, and other defects in the subject liens. Plaintiffs also complain that the Defendants are not the holder of the *bearer* notes or liens. As such, the Plaintiffs seek to quiet title.

## STATEMENT OF THE RELEVANT FACTS AND BACKGROUND

14. All the disputes before this Court stem from two (2) confirmed Chapter 11 plans and Orders of Confirmation, where no appeal was filed by the Defendants during either bankruptcy case. Federal Rule of Appellate Procedure 4(a)(1)(A) requires that the notice of appeal "be filed with the district clerk within 30 days after entry of the judgment or order appealed from." The requirement "is not jurisdictional but is a 'prerequisite to the exercise of [subject matter] jurisdiction."

15. The Bankruptcy Court previously issued *numerous* post-confirmation orders regarding the Original and Second Plan; ruling that the court lacked subject matter jurisdiction over post-confirmation disputes on the Subject Properties;

4

a. "ORDERED that Adversary No. 13-03336 styled Exquisite Designs By Castlerock & CO, Inc. and Brad Jones v. Bank of America, N.A. should be and is hereby dismissed without prejudice to the refiling of the same due to the **Court's lack of subject matter jurisdiction**;" *See* Exhibit 23, 'Order Dismissing Adversary Proceeding without Prejudice'

b. "the subject of the motion for relief, finds that it does not have jurisdiction. Therefore, the court orders as follows: It is ORDERED that the **bankruptcy court does not have jurisdiction regarding the collateral**, and that any rights and remedies that any party has regarding the collateral should be exercised in the courts of the State of Texas. *See* Exhibit 22,    'Order On Motion For Relief From Stay'

c. "**the Court does not have subject matter jurisdiction over the post-confirmation disputes**" *See* Exhibit 22-a, 'Order Denying [Bank of America, N.A.] Motion to Reopen' (emphasis added)

16. Since 2009, Exquisite has been involved in complex and lengthy series of *confirmed* chapter 11 bankruptcy cases in the  Bankruptcy Court of the Texas Southern District under case numbers  09-34883  ("Original Plan") *See* Exhibit 1 *and* 12-38337 ("Second Plan"). *See* Exhibit 2

17. Upon confirmation of the Original Plan; Jones and Veronica Staley (as signers) were *forever* released from any collection action and their personal obligation to the note ceased for the properties now owned by Exquisite ("Release Provisions"). The Subject Properties and those identified under "Class 2" of the Original Plan and Second Plan. *See* Exhibit 1 ¶ 3.02

18. The Original Plan was confirmed and discharged on April 7, 2010.

19. **No appeal was filed regarding the *Original* Plan's confirmation Order**. No order by the court revoked, replaced, or terminated the binding effect of the Original Plan and its terms and provisions.

20. Because of various contract breaches by the Defendant of the Original Plan, Exquisite filed and had confirmed the Second Plan on September, 2013. *See* Exhibit 2, 'Order Approving Second Amended Disclosure Statement and Confirming Fourth Amended Chapter 11 Plan of Reorganization'

21. **No appeal was filed regarding the *Second* Plan's confirmation Order**. No order by the court revoked, replaced, or terminated the binding effect of the Second Plan and its terms and provisions. *See* Exhibit 25, 'Court Docket'

22. Between 2004- 2006, Jones and Veronica Staley ("Staley") executed *bearer notes* and a deed of trust between Bank of America N.A. f/k/a Countrywide Home Loans, for the properties known as: 2 Mariners Lane  Kemah, TX 77565,   8127 Landau Park Lane  Spring, TX 77379,

8110 Landau Park Lane  Spring, Texas 77379,  and  16110 Craigshire Court  Spring, TX 77379.  ("Subject Properties" or the "Class 2 Properties")

23. 9 years after the Order of Confirmation of the Original Plan and its Release Provisions, the Defendant continue to pursue Jones and the signers of the notes for payment, erroneously report inaccurate credit information, and seek foreclosure actions and enforcement of the notes. *See* Exhibit 26, Exhibit 26-a; also *See* Exhibit 26-b, 'Credit Reporting Email'

24. 6 years after the Court disallowed claims by the Defendants in the Second Plan, the Defendants continue to pursue foreclosure actions against Jones and Staley. *See* Exhibit 16, also *See* Exhibit 17.

25. The Plaintiffs have had to resort to obtaining Temporary Restraining Orders in Texas state court, to prohibit these continued acts by the Defendants.

## EFFECT OF DEFENDANT'S FAILURE TO COMPLY WITH THE PLANS AND ORDERS OF THE COURT

26. The Plaintiffs have been unable to fully utilize the Subject Properties, because of the looming reputation within the real estate community that the Subject Properties are always in foreclosure status. At one point, 3 of the 4 'Class 2' properties were leased and generating income of $7,000 per month in rental income.

27. Exquisite was unable to quickly repair the properties post-hurricane Harvey, by obtaining a loan for said repairs, because the Defendant's would not cleanup the title and further had incorrect financial and pay off information linked to the properties.

28. Erroneous credit and debt information has gravely damaged Jones's credit reputation.  Jones is hindered in repairing his personal residence post-hurricane Harvey, because of  the Defendant's actions. Private and governmental lending agencies have advised Jones that with the multiple mortgages and the late payments being reported for the Subject Properties, Jones could not even qualify for Small Business Administration ("SBA") loans to repairs his primary residence.  Jones and his family have had to result in paying much higher interest on loans and financing they are rarely able to obtain.  Jones has even explored filing personal bankruptcy protection because of the negligence acts of the Defendants and their failure to comply with the Plans and Orders of the court.

## CLAIMS FOR RELIEF

## <u>Count I:  Breach Of Contract</u>

29. The Plaintiffs incorporate by reference all of the above paragraphs of this petition as though fully stated herein.

30. The Original Plan and Second Plan constituted a valid contract between the parties.

31. A confirmed bankruptcy plan is a contract in its own right. *United States Brass Corp. v. Travelers Ins. Group, Inc.* (*In re United States Brass Corp.*), 301 F.3d 296, 307 (5th Cir. 2002). As an unambiguous contract, this Court cannot look beyond the 4-corners of the documents, as for interpretation of its meaning or intent. The Texas Parol Evidence rule bars the introduction of prior or contemporaneous oral discussions and negotiations that alter its terms. *F.D.I.C. v. Wallace*, 975 F.2d 227, 229 (5th Cir. 1992).

32. The Defendants wrongfully and willfully refused to release Jones and Staley from their personal obligation to the note and deed of trust, cease all collection actions (including enforcement of the original note and foreclosure acts) against Jones, and adhere to the disallowed claims provisions of the Second Plan. Such breaches are breaches of contract.

33. Jones and others are the beneficiary of court ordered *injunctive provisions* which "forever" bar the Defendants from seeking collection actions against Jones, demanding payment from Jones, and foreclosure actions on the Subject Properties owned by Exquisite. *See* Exhibit 1, ¶ 3.02 "Injunctive Provisions".  Hereafter referred to as ("<u>Release Provisions</u>").

34. The Defendants continue to report Jones *personally* in debt for hundreds of thousands of dollars, with payments year(s) in the arrears. Defendants have made representations to correct this error in debt collections and credit reporting, but failed to do so.  *See* Exhibit 26 and *See* Exhibit 26-a;  also *See* Exhibit 26-b

35. The Defendants have written and spoken with Jones and acknowledgement that Jones and Staley were "***discharged of personal obligation***" to the Note, but continue to still report Jones as an party obligated to the debt and who is severely late in payments.  *See* Exhibit13, Exhibit 14, Exhibit 15; also *See* Exhibit 29

7

36. The Defendants and their predecessors plead in the affirmative before the U.S. Fifth Circuit Court of Appeals, that the *Release Provisions* remain fully binding. "***upon his discharge***, *Jones ceased to have any* <u>*personal interest in the Loan Agreements that were the subject of the First Bankruptcy Plan*</u> *and the dispute between Sommers and BANA*." *See* Exhibit 19 pp.12

37. The Defendants continued to demand payment from Jones and Veronica Staley ("Staley") and pursue foreclose actions on Subject Properties. *See* Exhibit 13, Exhibit 14, Exhibit 15, Exhibit 17, and Exhibit 12.

38. Counsel for the Defendant has represented to this Court that any alleged default by the debtor (post-confirmation), has resulted in the Defendants no longer having to adhere to final orders by the court. *See* Exhibit 24. This logic that somehow either of the Plans are not binding is without merit. The written pleadings and various communications show that the Defendants are aware of the continued binding effect of the Plans.

39. **There are no orders by the court or provisions in either of the confirmed Plans, which revokes, terminates, or replaces the final and non-appealable orders of confirmation.** The res judicata effect of the plans and their terms in the event of default or conversion of the case still apply.

<u>Defective Notices</u>:

40. The terms of Second Plan requires that all notices to be sent to Exquisite under section 9.02. Procedurally or substantively defective for any reason will be deemed ineffective notices.

41. On January 14th, 2018, Bayview's counsel sent Jones (not Exquisite) the Notice to Accelerate and Notice of Trustee Sale regarding *2 Mariners Lane  Kemah, Texas 77565 Galveston County, Texas* ("the Galveston property"), with a sale scheduled on February 5, 2019.[5] *See* Exhibit 16.'Notice of Trustee Sale'
Jones had to engage legal counsel to seek a Temporary Restraining Order to postpone the Feb 5th sale date.

---

[5] LOT TWO (2), OF WATERFORD POINT, A SUBDIVISION IN GALVESTON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 18, PAGE 267 OF THE MAP RECORDS OF GALVESTON COUNTY TEXAS

42. On May 13, 2019, agents of BONY sent Veronica Staley a Notice to Accelerate and Notice of Trustee Sale regarding *16110 Craigshire Court, Spring  Texas 77379  Harris County, Texas* ("the Craigshire property") *See* Exhibit 17.'Notice of Trustee Sale'

43. Plaintiff's points out to this Court that BONY sent its notices (addressed to Staley) to: 8111 Landau Park Lane  Spring, TX 77379, which is the address of Jones and Exquisite….not Staley. BONY followed the Plans where it relates to the "address" to send notice, but failed to send to the correct parties (including legal counsel).  This *procedurally* defect deemed ineffective notices occurred, because Bayview and Shellpoint failed to contractually send Exquisite notice of the Feb. 5th 2019 and June 4, 2019 trustee sale.

## **Count II:  Declaratory Relief**

44. The Plaintiffs incorporate by reference all of the above paragraphs of this petition as though fully stated herein.

45. The Plaintiffs request for declaratory relief is proper "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations". Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b).

46. Over 10 years has run since the disputes between the parties first arose (i.e. initial bankruptcy proceedings).  A clear and precise order with finding of facts and conclusion of law on the disputes within this petition will save time and cost between the parties and the judicial process.

47. The Defendants breaches are rooted in the premise that they are *not* bound by the legal and final orders of the bankruptcy court. A justiciable controversy exists regarding the Release Provisions of Jones, the disallowed debt and claims status pursuant to the two confirmed Plans, and the lien status of Subject Properties.  These disputes affect the rights and status of the parties which a declaration will resolve. Furthermore, a declaratory judgment can be a proper method to determine that a party performed under a contract.  See *Martin-Simon*, 177 S.W.3d at 483–84. A trial court has discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties.  *Bonham State Bank*, 907 S.W.3d at 467 (citing *James v. Hitchcock Independent School Dist.*, 742 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1987, writ denied).

## <u>Count III:  Suit To Quiet Title</u>

48. The Plaintiffs incorporate by reference all of the above paragraphs of this petition as though fully stated herein.

49. The Plaintiffs sent the Defendants numerous verbal and written communications advising them of the statute of limitation has run on the debt.

     A.  <u>Statute of Limitation</u>

50. Jones, Staley, Exquisite nor any other party have made payments to the Defendants (or any of their agents) on the promissory notes they signed on the Subject Properties since June 2009 or before. "*Since Shellpoint acquired the loan, we have not received any payments.*" *See* Exhibit 28, pp. 2 ¶ 8

51. **The 6-year statute of limitations has run under the Tex. Bus. & Com.Code Ann. § 3.118(a) to enforce a negotiable promissory note**. The Defendants could have brought suit against Jones (or any signer) of the promissory note during past 10 years, but failed to do so. Because a debt is necessary to support a lien, an action to foreclose on a debt's security is thus barred where the statute of limitations has run on the collection of a debt.    *Rabo Agrifinance Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 352 (5th Cir. 2009) (citing *McBryde v. Curry*, 914 S.W.2d 616, 61.  "[T]he liens are incidents of and inseparable from the debt." See *Univ. Sav. & Loan Ass'n v. Sec. Lumber Co.*, 423 S.W.2d 287, 292 (Tex. 1967). For one, the same set of actions—accelerating the note—triggers accrual for both foreclosure and an action to enforce the note.    See *Holy Cross*, 44 S.W.3d at 566. For another, a "lien is part and parcel of the underlying claim, the former existing only because of the latter." *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). Generally speaking, a specific debt (an obligation to pay money) is necessary to support a lien; the lien is affixed to land as security for some obligation to pay money." *Id*.at 411 n.10 (quoting *Calvert v. Hull*, 475 S.W.2d 907, 911 (Tex. 1972)); see *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993) (providing that satisfaction of the underlying debt discharges the lien).

"The debt being barred, the lien dependent thereon is unenforceable and was properly decreed to be null and void." *Godde v. Wood*, 509 S.W.2d 435, 444 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.); see *Holford v. Patterson*,257 S.W. 213, 214 (Tex.1923) (similar as to a mortgage lien); *Hubble v. Lone Star Contracting Corp.*,883 S.W.2d 379, 381 (Tex. App.—Fort Worth 1994, writ denied) (similar as to a materialman's lien); *In re Herman*, 211 Fed. Appx. 320, 322 (5th Cir. 2006) (per curiam) (similar as to an equitable lien). As a result, a foreclosure suit must be filed before the earlier of:    (1) the expiration of the four-year statute of limitations for foreclosure, see TEX. CIV. PRAC. & REM.CODE ANN.§ 16.035(a), or (2) the expiration of the six-year statute of limitations for suits to enforce the underlying promissory note.    See TEX.BUS. & COM.CODE ANN.§ 3.118(a); *Rabo Agrifinance*, 583 F.3d at 352.5.

52.  If the foreclosure suit is filed before the earlier of these dates—usually the four-year statute for foreclosure—both statutes of limitations are satisfied as to the foreclosure suit

53. On April 7, 2010, Exquisite emerged from bankruptcy in the original case and the bankruptcy estate and automatic stay ceased to exist.  Under the 6-year statute of limitation of Tex. Bus. & Com. Code Ann. § 3.118(a), **the Defendants had until April 7, 2016** ("Note Enforcement Bar Date") to file suit against Jones and other signers (non-debtors) for the enforcement of the notes.[6] Moreover, the Note Enforcement Bar Date could date even further back, if the Court adds the period in 2008 through June 2009 for additional default durations.

54.  The mortgage liens are barred by the 4-year statute of limitation under section 16.035 of the Texas Civil Practice and Remedies Code.  Section 16.035(a) states "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex.2001). BANA and the Defendants never sent Jones or Exquisite any clear and unequivocal written notice of abandonment,  new notice of default, rescission, or waiver of any of their prior and subsequent acceleration of the note. *Wilmington Trust v. Rob*, Case No. 17-50115 (5th Cir. May 21, 2018).  Acceleration was not stayed by either of the confirmed Plans.

---

[6] Alternatively, if the duration from the petition to the confirmation date for the *Second* case is considered (November 4, 2012 through October 3, 2013), this adds 333-days to the original April 7, 2016 Note Enforcement Bar Date  (i.e. March 7, 2017).

B. <u>Bearer Note</u>

55. The Second Plan preserved the rights for Jones and Exquisite to question the holder of the bearer note. *See* Exhibit 2, ¶ 3.10

56. The Defendants are not the holder or party in possession of the bearer note (i.e.: blank endorsement note). The Defendants have admitted to Jones and Exquisite that they have lost the original bearer notes. See Exhibit 12.

57. "an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed" Tex. Bus. & Comm, Sec. 3.205(b). See *Wilner v. Deutsche Bank Nat'l Trust Co.,No.* 02-11-00287-CV (Tex. App.–Fort Worth, Dec. 21, 2012, no pet.)(2012 Tex. App. Lexis10595)(mem. op.)(summary judgment granted for bank because bank had physical possession of the "original, wet ink note, indorsed in blank."); *Henning v. One West Bank FSB*, 405S.W.3d 950, 958 (Tex. App.–Dallas 2013, no pet.)(summary judgment affirmed for bank, which proved it was owner and holder of note after blank indorsement).

58. Jones (as a party to the note and deed of trust) and Exquisite preserved these causes of action in the Second Plan, because the Defendants previously disclosed that they were not in ppossession of any of the Bearer Notes, and merely had photographic copies.[7]

59. Second, the Defendant was also not a party to the deed of trust or any assignment of deed *prior* to the filing of the petition in the Second Plan. The lien would have followed note regardless of any assignment of recordation of the note.

60. The deed of trust on the 2 Mariners Lane property is defective and with the incorrect legal description. *See* Exhibit 30, 'Correction Deed'. Without waiver of the above claims, the Defendants are barred from correcting errors in the legal description of Subject Properties, which could have been raised and preserved in the Original or Second Plan.

C. <u>Key Provisions of the Plans- Disallowed *and* Disputed Claims</u>

---

[7] The Plaintiff's further allege that the photocopies of the promissory notes which were provided to Jones, Staley, and the court have been modified, manipulated, or changed from the originals. Pursuant to receiving discovery request, the Plaintiffs reserve the right, without waiver, to amend their complaint to include other causes of actions; including but not limited to fraud.

61. During the pendency the Second Plan, the bankruptcy court struck various objections and late filings of the Defendants.  *See* Exhibit 6, 'Order Granting in Part and Denying in Part the Debtor's Emergency Motion to Strike Objections to Confirmation of the Plan Filed by The Bank of New York Mellon and Deutsche Bank National Trust Company:

> The Defendants failed to file any proof of claims, filed claims late, and untimely filed objections to confirmation. "*the Court found that Bank of New York Mellon received timely notice of the filing of the proposed plan and simply filed a late objection.  Now, in the pending motion, the Bank of New York Mellon wants this Court to overlook the fact that it filed an untimely objection. This, the Court will not do*."  *See* Exhibit 7, 'Order Denying Emergency Motion of The Bank of New York Mellon For Allowance of Late Filing Objections'. also *See* Exhibit 8, 'Claims Register'

62. The Second Plan (Exhibit 2) had terms and provisions which clearly define *disallowed* and *disputed* claims. ("Disallowed Claim Provisions")  These provisions are:

| ¶1.01 "Allowed Claim" or " Claim" | shall mean (i) *a Claim evidenced by a proof of claim filed on or prior to the Bar Date which is either not scheduled by the Debtor or scheduled by the Debtor as disputed*, contingent or unliquidated as to which no objection has been made within 90 days after the Effective Date or *(ii) a Claim scheduled by the Debtor and not shown as disputed*, contingent or unliquidated, or (iii) a Claim for payment for compensation as provided for under Section 507(a) of the Bankruptcy Code which is allowed, approved and ordered paid by the Bankruptcy Court, or (iv) any Claim ordered paid by the Bankruptcy Court.   An Allowed Claim may refer to a Secured Claim, Unsecured Claim or Section 507 Claim as the context provides. |
|---|---|
| ¶ 8.01 "Disputed Claim" | **A disputed claim is a claim that has not been allowed** or disallowed by a final non- |

| | appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or **(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed**, contingent, or unliquidated. |
|---|---|
| ¶ 8.02 "Delay of Distribution on a Disputed Claim" | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |

<u>Lien Stripping Provisions</u>:

63. The Second Plan had 11 U.S.C. § 1141 provision that stripped the liens on property and claims that were disallowed.

64. The U.S. Fifth Circuit Court of Appeal held "under section 1141(c), the confirmation of a Chapter 11 plan voids liens on property dealt with by the plan unless they are specifically preserved, if the lien holder participates in the reorganization." *Elixir Indus., Inc. v. City Bank & Trust Co. (In re Ahern Enters., Inc.*, 507 F.3d 817, 822 (5th Cir. 2007). The Defendants actively participated in the bankruptcy cases with appearance in several hearings, including the filing of motions and objections.

65. The Fifth Circuit has also reaffirmed the long-standing axiom that he who stands mute while his rights are being affected during the course of a bankruptcy case later will regret that silence. *In Matter of Intelogic Trace*, 200 F.3d 382 (5th Cir. 2000).

66. The bankruptcy court further knew and understood that by the Defendants filing late objections and/or no proof of claims, this would have an impact of the Defendant's lien status. "The Court's order on Docket Number 122 strikes the objection <u>with respect on the lien on the property</u>…" (emphasis added) *See* Exhibit 7

| ¶ 7.01 "Effect of Confirmation" | As provided for in §1141 of the Bankruptcy Code, the provisions of Debtor's Plan shall bind the Debtor and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan. **As provided for in §1141(b) of the Bankruptcy Code, confirmation of Debtor's Plan vests all of the property of the estate in the Debtor. After confirmation of the Debtor's Plan, all property of the Debtor dealt with by the Plan (which includes all property of the Debtor) is <u>free and clear of all liens, claims, and interests of creditors</u> and equity security holders, so long as any Creditor claiming liens or interest in** *(continued)* **Property of the Debtor, received notice of the Debtor's petition and participated in any capacity during the case, except to the extent provided in this Plan**. |
|---|---|

67. The Post-Confirmation Order further had lien stripping provisions under U.S.C §1141, which read "All creditors and all other parties in interest are hereby notified that a plan as filed or modified has been confirmed by Order of the court entered on October 3, 2013 and that confirmation of the plan, to the extent provided in 11 U.S.C. 1141, discharges the debtor, binds the debtor and other entities, **vest the property of the estate in the debtor free and clear of claims and interest of the creditors and other entities**, and voids any judgment and **<u>operates as an injunction with respect to any debt discharged</u>**". *See* Exhibit 3, 'Post confirmation Order and Notice'.

15

<u>Post-confirmation Conversion of the Second Plan</u>

68. Nearly 12-months after confirmation of the Second Plan and the winding up of the bankruptcy estate, and the second case was converted to a Chapter 7.

69. **There are no orders of the Court which revoked, terminated, or replaced the binding effect of the terms and provisions in the Order of Confirmation and Plan of Reorganization or the Post Confirmation Order and Notice.** Any later material default of the Plan or a post-confirmation conversion does to strip the res judicata effect of the Plan. *In re Howe*, 913 F.2d 1138, 1145 (5th Cir. 1990), also See *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). *See* Exhibit 25 'Docket'

70. The Chapter 7 Trustee sued the Defendant's and prevailed for its breach of contract claims regarding the terms of the Original Plan, which was still binding. *See* Exhibit 20, also *See* Exhibit 21

71. The Trustee abandoned the Class 2 properties, but ultimately did not have standing over properties or the claims that attached. *See* Exhibit 18, pp. 2

72. The Class 2 properties vested back to the Debtor upon confirmation. No order of the court or provision in the Second Plan supersede these vesting provisions. The bankruptcy court lost jurisdiction and the trustee standing over the properties. *See* Exhibit 22, also *See* Exhibit 23 *In re Craig's Stores,* <u>266 F.3d at 390.</u>, the court noted that upon confirmation of the plan, the debtor's estate, and therefore the bankruptcy court's jurisdiction, ceases to exist. *Id.* Under this view, the bankruptcy court tosses the newly reorganized debtor out of the warmth of the "'protective wraps'" of bankruptcy into the "'cold, cruel business world. . . .'" *Id.* at 390-91. In *In re U.S. Brass Corp.,* the Fifth Circuit added specificity to its ruling in *In re Craig's Stores* by holding that a bankruptcy court does indeed have post-confirmation jurisdiction, but only for disputes concerning the implementation or execution of a confirmed plan pursuant to 28 U.S.C. § 1142(b) or over core proceedings under § 157. <u>301 F.3d at 304-06</u>.

## **Count III:  Negligence**

73. Plaintiffs incorporate by reference all of the above paragraphs of this petition as through fully state herein.

16

74. The Defendants had a duty to the Plaintiffs to act in accordance with the Original Plan and Second Plan of Exquisite.

75. As a result of the above-described acts, the Defendants failed to act in accordance with the Original and Second Plan, thereby breaching its duty to the Plaintiffs.

76. The Plaintiffs' inability to utilize and sell the Subject Properties, the increased cost of obtaining financing, and damages to credit were proximately cause by the Defendant's breach. The Plaintiffs are entitled to compensation for these damages.

## Count IV: RESPA, FDCPA, CFPA and Texas DTPA violations

77. Plaintiffs incorporate by reference all of the above paragraphs of this petition as through fully state herein.

78. The Defendants had specific obligations as it relates to Jones and Staley under RESPA, CFPA and FDCPA.

79. Under Regulation Z and Regulation X, a servicer is prohibited from engaging in unfair, deceptive, and abusive acts and practices related to payment crediting and debt collection activities under the CFPA and FDCPA.

    a. The Defendants have failed to comply with Regulation Z, Regulation X, the CFPA and/or the FDCPA in at least two ways.

        i. First, in numerous instances, The Defendants sent Jones and Staley periodic statements that contain inaccurate information—such as the amount of the debt owed and/or balance of escrow account. As demonstrated by the Defendants recurring inaccuracies in its periodic statements, the Defendants have also failed to maintain reasonably designed policies and procedures to ensure that it is providing borrowers with accurate and timely periodic statements.

        ii. Second, based on the Defendants above failures, the Defendants have communicated, orally and in writing, inaccurate information to borrowers about amounts due from borrowers, amounts received from borrowers, dates as to when the Defendants received borrowers' payments, and borrower delinquency statuses. These representations are material to borrowers

managing their mortgages and are likely to mislead borrowers acting reasonably under the circumstances. *See* Exhibit 26, Exhibit 26-a; also *See* Exhibit 26-b

80. The Defendants have also failed to perform basic tasks associated with managing escrow accounts. Specifically, due to systems failures, control lapses, and excessive reliance on manual processes, the Defendants has failed to conduct escrow analyses or accurate escrow analyses; failed to timely send borrowers accurate escrow statements; and failed to properly account for and apply borrower escrow shortage payments.

81. Shellpoint and Bayview failed to provide complete and accurate borrower loan information to the new servicers or to notify new servicers of errors that are likely to impact the accuracy and completeness of the transferred borrower records. Under Regulation X, Shellpoint and Bayview as transferor servicer, to maintain policies and procedures reasonably designed to ensure that it can timely transfer all information and documents in its possession or control relating to the transferred loan to the new servicer in a form and manner that ensures the accuracy of the transferred information and documents and that enables the new servicer to comply with applicable laws and the terms of the new servicer's obligations to the owner or assignee of the mortgage loan ("investor guidelines").

82. BANA, Select Portfolio Servicing, Inc., Shellpoint and Bayview's failure to transfer complete and accurate borrower records and disclose known errors to new servicers' impacts borrowers after their loans have been transferred to a new service.

## JURY DEMAND

83. Pursuant to Rule 38 of the Federal Rules of Civil Procedures, the Plaintiffs demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request this Court enter a final judgment:

84. Temporary and Permanent injunction on the Subject Properties;

85. Enter a judgment according to the declaratory relief sought;

86. Enter a judgment to quiet title;

87. Permanently enjoin Defendants from committing future violations of the CFPA, FDCPA, RESPA, TILA, and HPA, and enter such other injunctive relief as appropriate

88. Award such relief as the Court finds necessary to redress injury to Plaintiffs and other consumers, including, but not limited to, rescission or reform of contracts; refund of monies; restitution; and payment of damages or other monetary relief

89. Award Plaintiff  its cost in this action, including filing fees and court cost, attorney's fees including but not limited to; preparation and trial of this lawsuit, post-trial, pre-appeal legal services and an appeal to the U.S. Fifth Circuit Court of Appeals; and

90. Granting such other and further relief as the Court deems just and proper, including such equitable relief that may be appropriate or necessary


Dated: May 22, 2019

<div style="margin-left:40%">

Respectfully submitted,

Attorney for Plaintiff
Exquisite Designs By Castlerock & Co, Inc.
/s/ Robert R. Jones
Robert R. Jones III
TBN 24092597
Email: robertjoneslaw@gmail.com
Phone: (832) 896-1010
Facsimile: (281) 404-9021
2411 Emancipation Ave., Suite 202
Houston, Texas 77004




/s/ Brad  Jones
Brad Jones, *Pro Se* Plaintiff
Email: brad.jones04@live.com
Phone: (832) 217-4730
8111 Landau Park Lane
Spring, Texas 77379

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this May 22, 2019 a true and correct copy of the foregoing was sent to:

H Gray Burks
Shapiro Schwartz LLP
13105 Northwest Freeway, Suite 1200
Houston, TX 77040
713/933-1509
*via email at* gburks@LOGS.com

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Attorney for Plaintiff
Exquisite Designs By Castlerock & Co, Inc.
/s/ Robert R. Jones

Robert R. Jones III
TBN 24092597
Email: robertjoneslaw@gmail.com
Phone: (832) 896-1010
Facsimile: (281) 404-9021
2411 Emancipation Ave.., Suite 202
Houston, Texas 77004